BARRETT S. LITT (No. 45527)
E-mail: blitt@kmbllaw.com
MARILYN E. BEDNARSKI (No. 105322)
E-mail: mebednarski@kmbllaw.com
DAVID S. McLANE (No.124952)
E-mail: dmclane@kmbllaw.com
CAITLIN S. WEISBERG (No. 262779)
E-mail: cweisberg@kmbllaw.com
KAYE, McLANE & BEDNARSKI
975 East Green Street
Pasadena CA 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Wendy J. Koen (No. 255759)
E-mail:  wkoen.defender@gmail.com
Law Office of Wendy J. Koen
32818 Mira Street
Menifee, California 92584
Telephone: (858) 500-2300

Attorneys for Plaintiff WILLIAM J. RICHARDS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. RICHARDS,<br><br>            Plaintiff,<br><br>      v.<br><br>CHARLES PICKETT, JOHN PARSONS, DONALD B. THORNTON, BONIFACIO C. ESPERANZA, JOHN CULTON, DAVID DUNN, NICHOLAS AGUILERA, JOSEPH BICK, RAY ANDREASEN, NABIL ATHANASSIOUS, ELI RICHMAN, | CASE NO.<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>(1) Violation of Civil Rights – Individual Defendants (42 U.S.C. § 1983)<br>(2) *Monell* Claim for Violation of Civil Rights (42 U.S.C. § 1983)<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT

BALRAJ DHILLON, DEEPAK MEHTA, JOHN PRICE, CHAU, NOEL HUI, EDMUND KO, ARROWHEAD REGIONAL MEDICAL CENTER, COUNTY OF SAN BERNARDINO, and DOES 1 through 10, inclusive,

Defendants.

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the federal civil rights claims alleged herein pursuant to 28 U.S.C. §§ 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

2. Pursuant to 28 U.S.C. § 1391, venue lies in the Central District of California because a substantial part of the events or omissions giving rise to the claims occurred within the Central District of California and, upon information and belief, all of the Defendants are residents of the State of California, with at least one Defendant residing within the Central District of California.

## II. PARTIES

3. Plaintiff WILLIAM J. RICHARDS ("Plaintiff") is an adult competent to bring this suit in this Court. Prior to his arrest, and at the time of the events described herein, he was a resident of the County of San Bernardino. Following his wrongful arrest, Plaintiff was detained and ultimately incarcerated. During such times, he was in the custody of the San Bernardino Sheriff's Department ("SBSD") and the California Department of Corrections and Rehabilitation ("CDCR").

4. At all relevant times during the years 2002 to 2004, Defendant CHARLES PICKETT, D.O., was the Chief Medical Officer and Health Care Manager at Centinela State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for

setting the policies, customs, and practices of Centinela State Prison. He is sued in his individual capacity.

5. At all relevant times during the years 2002-2004, Defendant JOHN PARSONS, MD, was the Chief Physician at Centinela State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of Centinela State Prison. He is sued in his individual capacity.

6. At all relevant times during the years 2002-2004, Defendant DONALD B. THORNTON, MD, was a staff physician at Centinela State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of Centinela State Prison. He is sued in his individual capacity.

7. At all relevant times during the years 2002-2004, Defendant BONIFACIO C. ESPERANZA, MD, was a staff physician at Centinela State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of Centinela State Prison. He is sued in his individual capacity.

8. At all relevant times during the years 2004-2006, Defendant JOHN W. CULTON, MD, was the Chief Medical Officer and Health Care Manager at Chuckawalla Valley State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of Chuckawalla Valley State Prison. He is sued in his individual capacity.

9. At all relevant times during the years 2004-2006, Defendant DAVID

DUNN, MD, was a staff physician at Chuckawalla Valley State Prison and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of Centinela State Prison. He is sued in his individual capacity.

10. During the years 2008-2016, Defendants NICHOLAS AGUILERA, MD, JOSEPH BICK, MD, and RAY ANDREASEN, MD, were the Chief Medical Officers and Health Care Managers at California Medical Facility and were employees and/or agents of the CDCR acting under color of law, who were responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of California Medical Facility. They are sued in their individual capacities.

11. At all relevant times during the years 2008-2010, Defendant NABIL ATHANASSIOUS, MD, was a physician and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of California Medical Facility. He is sued in his individual capacity.

12. At all relevant times during the years 2008-2010, Defendant ELI RICHMAN, MD, was a physician and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of California Medical Facility. He is sued in his individual capacity.

13. At all relevant times during the years 2008-2010, Defendant BALRAJ DHILLON, MD, was a physician and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the

policies, customs, and practices of California Medical Facility. He is sued in his individual capacity.

14. At all relevant times during the years 2008-2010, Defendant DEEPAK MEHTA, MD, was a physician and an employee and/or agent of the CDCR acting under color of law, who was responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of California Medical Facility. He is sued in his individual capacity.

15. Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is, and at all times relevant hereto was, a duly authorized public entity or political subdivision, organized and existing under the laws of the State of California. The San Bernardino Sheriff's Department (hereinafter "SBSD") is, and at all relevant times was, an agency and subdivision of Defendant COUNTY. The COUNTY and SBSD are located within the State of California. At all relevant times, Defendant COUNTY and SBSD possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SBSD and the actions of employees of the SBSD, including customs, policies and/or practices relating to police tactics, methods, investigations, arrests, evidence, and discovery; as well as to personnel supervision, performance evaluation, internal investigations, discipline, records maintenance, and/or retention. Defendant COUNTY is sued as a local government entity under 42 U.S.C. § 1983 because its customs, policies and/or practices with regard to the operation of the SBSD were a moving force behind the constitutional violations claimed by Plaintiff herein.

16. At all relevant times during the period 2009-2013, ARROWHEAD REGIONAL MEDICAL CENTER ("ARMC"), its agents, officers, employees, and independent contractors, were an agent of the COUNTY and were under contract with COUNTY for the purpose of providing medical care and attention on behalf of the COUNTY to prisoners under the care and control of the COUNTY and CDCR.

17. At all relevant times during the period 2009-2013, Defendants JOHN PRICE, MD, CHAU, MD, NOEL HUI, MD, and EDMUND KO, MD, were physicians and employees and/or agents of ARMC, the COUNTY, and the CDCR acting under color of law, who were responsible for providing, supervising, and managing the medical care, attention, and treatment given to prisoners and for setting the policies, customs, and practices of San Bernardino County Jails. They are sued in their individual and official capacities.

18. Plaintiffs are ignorant of the true names and capacities of Defendant medical providers sued herein as DOES 1 through 10, inclusive, including the Chief Medical Officers and Medical Directors of Chuckawalla Valley State Prison, California Correctional Institution (Tehachapi), California Medical Facility, and the COUNTY during the relevant time periods. At present time, the true names and capacities of Defendants sued herein as DOES 1 through 10 are unknown to Plaintiff. Upon information and belief, the true names and capacities of DOE Defendants are contained in records, documents, and other discovery that is unavailable to Plaintiff and can only be ascertained through the discovery process. Upon information and belief, each of the DOE Defendants was in some manner responsible for the acts and omissions alleged herein, and Plaintiff will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

III. **GENERAL ALLEGATIONS**

19. At all relevant times, each and every Defendant was the agent and/or employee and/or co-conspirator of each and every other Defendant, and was acting within the scope of such agency, employment and/or conspiracy and/or with the permission, consent, and/or direction and/or adoption of the other co-Defendants.

20. Each of the Defendants caused and is responsible for the unlawful conduct and resulting injury herein alleged by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing,

acquiescing in or failing to take action to prevent the unlawful conduct by intervention, or promulgating policies and procedures or practices pursuant to which the unlawful conduct occurred; by failing and refusing to initiate and maintain adequate training, supervision, policies, procedures and protocols; by failing to implement and ensure compliance with policies and procedures to ensure the safety and reasonable security of individuals, such as Plaintiff; and by ratifying the unlawful conduct performed by agents, employees, counselors, staff, and officers under their direction and control.

21. Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference will also be deemed to mean the acts and failures to act of each Defendant individually, jointly, and/or severally.

22. The acts and/or omissions of all Defendants, named and un-named were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to or reckless disregard for Plaintiff's rights and the truth.

23. Each and every paragraph of this complaint is expressly incorporated into each cause of action alleged herein as if fully stated therein.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

24. Following several failed attempts, in July 1997, Plaintiff William Richards was wrongfully convicted of murdering his wife, a crime that he did not commit. Plaintiff was transferred to the custody of the California Department of Corrections, later California Department of Corrections and Rehabilitation ("CDCR"), on or about December 11, 1998. Plaintiff's conviction was reversed on May 26, 2016 by the California Supreme Court, following years of post-conviction litigation seeking to prove his innocence. He remained in custody until June 21, 2016.

25. During the years 2002 through 2004, Plaintiff was housed at Centinela State Prison ("Centinela"). At that time: Defendant Charles Pickett, D.O., was the Chief Medical Officer and Health Care Manager; Defendant John Parsons, MD, was

the Chief Physician; and Defendants Donald B. Thornton, MD, and Bonifacio C. Esperanza, MD, were staff physicians; Doe Defendants were medical providers and policy makers with respect to the delivery of health care services. All of these Defendants provided medical care to Plaintiff during the years 2002-2004 and were responsible for his health and medical treatment. These defendants, especially Defendant Charles Pickett as Chief Medical Officer, were responsible for coordinating health care needs for inmates and establishing policies and practices for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

26. During the years 2002 through 2004, while housed at Centinela State Prison, Plaintiff began to present symptoms consistent with the onset of prostate cancer. Plaintiff reported these symptoms to Defendants during medical appointments.

27. On or about August 28, 2003, at Centinela State Prison, Defendant Bonifacio Esperanza ordered blood testing for Plaintiff to screen his PSA levels. On or about September 5, 2003, laboratory results were returned with a finding that Plaintiff's PSA (prostate-specific antigen) level was 3.8, higher than normal. Plaintiff was not informed of the test results, and no further action was taken by Dr. Esperanza or CDCR medical staff based on the test results.

28. PSA screening is preformed to aid in the diagnosis of prostate cancer. A higher than normal PSA reading is an indicator that the person has a prostate tumor. PSA screening, combined with other diagnostic tools, such as taking a medical history, evaluating the patient's symptoms (if any), a digital rectal examination, and/or a prostate biopsy are used to confirm the existence of cancer or to take an approach of "watchful waiting," whereby the patient is monitored regularly, including with further PSA tests, to determine if/when cancer develops. In 2003, following the blood test showing Plaintiff's abnormal PSA level, none of these tests were performed on Plaintiff or presented to him as options. Plaintiff was

not informed of the results of the PSA test and received no medical counseling or treatment plan in relation to the abnormal PSA test results.

29. During the years 2004 through 2006, Plaintiff was housed at Chuckawalla Valley State Prison ("CVSP"). At that time: Defendant John W. Culton, MD, was the Chief Medical Officer and Health Care Manager; Defendant David Dunn, MD, was a staff physician; Doe Defendants were medical providers and policy makers with respect to the delivery of health care services. These Defendants provided medical care to Plaintiff during the years 2004-2006 and were responsible for his health and medical treatment. These defendants, especially Defendant John W. Culton as Chief Medical Officer, were responsible for coordinating health care needs for inmates and establishing policies and practices for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

30. During the years 2004 through 2006, while housed at CVSP, Plaintiff informed his medical providers about symptoms he was experiencing and asked his medical providers for prostate cancer screening but was not given regular PSA tests or any other form of prostate cancer screening or diagnostic treatment. Plaintiff was not informed of the results of his 2003 PSA test. Plaintiff was told, contrary to the results of his 2003 PSA test, that his bloodwork did not present any concerns and that his PSA levels was within normal limits, although those levels were not being tested during the years 2004-2006.

31. During the years 2006-2007, Plaintiff was housed at California Correctional Institution in Tehachapi ("CCI"). At that time: Doe Defendants were medical providers and policy makers with respect to the delivery of health care services at CCI. These Defendants provided medical care to Plaintiff during the years 2006-2007 and were responsible for his health and medical treatment. These defendants, especially the CCI Chief Medical Officer(s), were responsible for coordinating health care needs for inmates and establishing policies and practices

for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

32. In or around March 2007, a second PSA test was ordered and performed. Plaintiff's PSA level was measured to be 6.8, well above normal levels for a person of Plaintiff's age. Although Plaintiff was referred to a urologist as a result of these lab results and although Plaintiff followed up with an inquiry about the appointment, no appointment was made until later.

33. On or about July 2007, a prostate biopsy was eventually performed on Plaintiff. Tissue was sampled from the right and left side of Plaintiff's prostate (three cores each). The right biopsy revealed adenocarcinoma of the prostate, cT2a, with a Gleason score of 7 (4+3), involving 2 cores and accounting for 60% perineural invasion.

34. Plaintiff was transferred to California Men's Colony ("CMC") in or around September 2007. Doe Defendants were medical providers and policy makers with respect to the delivery of health care services at CMC. These Defendants provided medical care to Plaintiff during the years 2007-2008 and were responsible for his health and medical treatment. These defendants, especially the CMC Chief Medical Officer(s), were responsible for coordinating health care needs for inmates and establishing policies and practices for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

35. Radiation treatment did not begin until October 2007, six months after his March PSA test and several months after his biopsy. The treatment was concluded in January 2008. Plaintiff was also started on ADT (androgen deprivation therapy) treatments, beginning in November 2007 with an injection of 22.5 mg of Lupron on November 21, 2007. Plaintiff was ordered to receive injections every three months. He received a second injection on February 15, 2008 and a third injection on March 14, 2008.

36. Plaintiff was transferred to California Medical Facility ("CMF") in

approximately February 2008. During the years 2008 through 2016, when Plaintiff was not housed in a San Bernardino County jail facility or transferring to/from a San Bernardino County jail facility, he was housed at CMF. Defendants Nicholas Aguilera, Joseph Bick, Ray Andreasen, Nabil Athanassious, Eli Richman, Balraj Dhillon, Deepak Mehta, and Doe Defendants were medical providers and policy makers with respect to the delivery of health care services at CMF. These Defendants provided medical care to Plaintiff during the years 2008-2016 and were responsible for his health and medical treatment at CMF. These defendants, especially the CMF Chief Medical Officer(s), were responsible for coordinating health care needs for inmates and establishing policies and practices for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

37. Follow-up blood tests produced the following PSA level measurements: 0.2 (3/25/08), 0.5 (6/10/08), 0.6 (8/5/08), 0.7 (9/30/08), 0.7 (10/3/08), 1.1 (11/17/08). In August 2008, the rising post-radiation PSA levels were acknowledged in progress notes. Around that time, Defendant Athanassious noted that there was "clinical evidence of recurrence."

38. Rapid and significant increases in PSA levels following radiation, measured in by velocity and doubling time, is an indication of both of the recurrence of prostate cancer and the aggressiveness of the cancer. Plaintiff's short doubling time and rapid increase in PSA levels following the conclusion of his radiation and ADT treatments meant that early and aggressive follow-up treatment should have been considered and recommended.

39. As early as June 2008, a biopsy was recommended. The order for a biopsy was noted at various points between June 2008 and December 2009, but never completed. During this period, plaintiff was also referred for a urology appointment multiple times, but one was not scheduled. Plaintiff's PSA levels continued to rise, the possible recurrence of his prostate cancer was repeatedly

noted, and yet no follow-up or treatment was provided.

40. Between October 2008 and March 2010, Plaintiff was transferred multiple times between CDCR institutions and San Bernardino County jail. Starting in or around March 2010, Plaintiff spent a three-year period in San Bernardino County jail while his petition for writ of habeas corpus was litigated. In or around March 2013, Plaintiff was rehoused in CDCR institutions. During the period that he was housed in San Bernardino County jails, Defendants ARMC, John Price, Chau, Noel Hui, Edmund Ko, and Doe Defendants were medical providers and policy makers with respect to the delivery of health care services at to prisoners and detainees at San Bernardino County jail. These Defendants provided medical care to Plaintiff during the years 2008-2013 and were responsible for his health and medical treatment while housed in San Bernardino County jails. These defendants, especially the supervising medical officials for the San Bernardino County jails, were responsible for coordinating health care needs for inmates and establishing policies and practices for ensuring that inmates were receiving appropriate and necessary health care services and follow-up treatment.

41. Plaintiff eventually received a urology consultation in or around December 2009 with Defendant Athanassious. At that time, Plaintiff was housed at CMF. Defendant Athanassious noted that Plaintiff's PSA had been rising since April 2008 and had reached 1.5, although the cut line is usually 0.5. Instead of referring Plaintiff for curative treatment or discussing those options with him, Defendants recommended androgen therapy which would, at best, slow down the growth of the cancer. A biopsy was not done to confirm the recurrence or evaluate the aggressiveness of the cancer. In December 2009, Plaintiff began another round of ADT treatments.

42. Between December 2009 and August 2012, while Plaintiff was housed at CMF and San Bernardino County jails, Plaintiff received haphazard and inconsistent treatment. Tests, appointments, and procedures were ordered but left

incomplete, rescheduled multiple times, and/or delayed for months. Plaintiff's PSA levels, which decreased after ADT treatments, would then steadily increase again. This pattern was noted in Plaintiff's medical records. No further action was taken. No biopsy was performed until September 2011. No alternative treatment plan or more aggressive treatment was proposed during this period.

43. In or around August 2012, after extensive advocacy by Plaintiff and his representatives, cryoablation was performed at Loma Linda Medical Center.

44. At some point after his cryoablation treatment, Plaintiff's PSA levels rose again, once again indicating chemical recurrence of the prostate cancer. Plaintiff underwent intermittent ADT treatment until his release from custody in June 2016.

45. On or around May 3, 2016, during an appointment with his oncologist, Plaintiff was informed for the first time that he had no further curative treatment options and that his cancer was terminal. Plaintiff, who with the assistance of his post-conviction counsel had made every attempt to improve his medical treatment while in custody and work within the system, learned that the delays and deficient treatment he received could not be corrected and had cost him his chance of survival.

46. At the time of filing this Complaint, Plaintiff's cancer continues to respond to hormone therapy, but at some point, the hormone therapy will no longer be effective at preventing the growth and spread of Plaintiff's prostate cancer. Other treatments that are available, such as chemotherapy, may serve to prolong life, but will not cure Plaintiff's disease.

## V. PARTICIPATION, STATE OF MIND, AND DAMAGES

47. All Defendants acted illegally under color of law.

48. Each individual Defendant participated in the violations alleged herein, and/or directed the violations alleged herein, and/or knew or should have known of the violations alleged herein and failed to act to prevent them. Each Defendant

ratified, approved or acquiesced in the violations alleged herein.

49. As joint actors with joint obligations, each individual Defendant was and is responsible for the failures and omissions of the other.

50. Each individual Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

51. Each Defendant acted deliberately, purposefully, knowingly and/or with deliberate indifference to, or reckless disregard for an accused's rights or the truth in engaging in the conduct alleged herein.

52. As a direct and proximate result of the described acts, omissions, customs, practices, policies, and decisions of the Defendants, Plaintiff was not diagnosed and not treated and was later was provided untimely, deficient, and inadequate medical care for prostate cancer. As a direct and proximate result of the deliberately indifferent medical care that Plaintiff received from Defendants, Plaintiff's prostate cancer advanced without treatment; curative treatments, including radiation and cryoablation, were delayed; and Plaintiff's health deteriorated. The deliberately indifferent mistreatment, delayed treatment, and non-treatment of Plaintiff's prostate cancer materially and negatively impacted his prognosis and chances of survival from an otherwise treatable and curable disease.

53. As a direct and proximate result of the substandard medical care that Plaintiff received, Plaintiff has suffered, continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish, mental and physical pain and injury, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, and apprehension. For such injuries, he has incurred and will continue to incur significant damages.

54. The aforementioned acts and/or omissions of Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith, and done knowingly, purposefully, and/or with deliberate indifference to and/or reckless disregard for Plaintiff's constitutional rights or the truth.

55.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, and each of them, Plaintiff was required to retain an attorney to institute and prosecute the within action and render legal assistance to Plaintiff so that he might vindicate the loss and impairment of his constitutional rights. By reason thereof, Plaintiff requests payment by Defendants of reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS — 42 U.S.C. § 1983**

**(AGAINST ALL INDIVIDUAL DEFENDANTS, ARMC, AND DOES 1-10)**

56.    Plaintiff re-alleges and incorporates by reference all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as though fully stated herein.

57.    The Individual Defendants, ARMC, and DOES 1 through 10, while acting under color of law, caused Plaintiff to be deprived of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fifth, Eighth, and Fourteenth Amendments by, *inter alia*, delaying and/or denying Plaintiff access to and/or delivery of reasonable and adequate diagnosis, medical care, treatment, follow-up, and supervision for his serious but treatable medical condition, with deliberate indifference to the risk of harm to Plaintiff. To the extent that the source of Plaintiff's rights is any constitutional or statutory source other than the aforementioned constitutional amendments, this claim is brought on those bases as well. Defendants' acts and omissions that caused these violations were done with deliberate indifference to or in reckless disregard of Plaintiff's rights.

58.    The Individual Defendants, ARMC, and DOES 1 through 10 were physicians, nurses, medical providers, and custodial staff responsible for providing Plaintiff medical care, treatment, follow-up, and supervision. They knew and/or should have known that Plaintiff was suffering from a serious but treatable medical condition, that he required reasonable medical care and treatment, supervision and

monitoring, and that without indicated medical care and treatment his condition would deteriorate. These Defendants and Doe defendants deprived Plaintiff of his rights by, *inter alia*, delaying and/or denying Plaintiff access to and/or delivery of reasonable and adequate diagnosis, medical care, treatment, follow-up, and supervision for his serious but treatable medical condition, with deliberate indifference to the risk of harm to Plaintiff.

59. The Individual Defendants, ARMC, and DOES 1 through 10 were physicians, nurses, medical providers, and custodial staff responsible for establishing and carrying out the policies, practices, and customs of the CDCR and San Bernardino County Sheriff's Department with respect to the diagnosis, supervision, monitoring, and treatment of prisoners and detainees with serious medical conditions. Defendants failed to establish and/or carry out policies, practices, and customs that would ensure timely, adequate, and reasonable diagnosis, supervision, monitoring, and treatment of serious medical conditions. In so doing, Defendants acted with deliberate indifference to the risk of harm to Plaintiff. And as a result, these Defendants and Doe defendants deprived Plaintiff of his rights and/or allowed others to deprive Plaintiff of his rights by, *inter alia*, delaying and/or denying Plaintiff access to and/or delivery of reasonable and adequate diagnosis, medical care, treatment, follow-up, and supervision for his serious but treatable medical condition.

60. Defendants, and each of them, conspired and agreed to commit the above-described unconstitutional deprivations of Plaintiff's rights and acted in concert to deprive Plaintiff of his rights to reasonable and adequate medical care, treatment, and security.

61. Defendants, and each of them, engaged in, knew about, or should have known about the acts and/or omissions that caused the constitutional deprivations alleged herein and failed to prevent it and/or ratified/approved it and/or acquiesced in them.

62. Defendants, and each of them, committed the aforementioned acts and omissions in bad faith and with knowledge that their conduct violated well-established law.

63. As a direct and proximate result of Defendants' aforementioned acts and/or omissions, Plaintiff was injured as set forth in earlier paragraphs of this complaint and is entitled to compensatory damages according to proof and attorneys fees.

64. The aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully, maliciously, oppressively, and/or in reckless disregard of Plaintiff's rights. By reason thereof, Plaintiff is entitled to punitive and exemplary damages from Defendants according to proof.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS — 42 U.S.C. § 1983 (*MONELL*)

## (AGAINST DEFENDANT COUNTY)

65. Plaintiff re-alleges and incorporates by reference all foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint, as though fully stated herein.

66. During all times relevant hereto, Defendant COUNTY and the SBSD, an agency and subdivision of Defendant COUNTY, were public entities and municipal corporations, duly organized and existing under and by virtue of the laws of the State of California. Defendant COUNTY, through its policymakers and as a matter of custom, policy or practice, caused Plaintiff to be deprived of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fifth, Eighth, and Fourteenth Amendments by, *inter alia*, hiring and maintaining medical personnel who are predisposed to deny or delay prisoners access to medical attention or fail to provide adequate and reasonable medical care for serious medical conditions; delaying and/or denying prisoners access to and/or delivery of reasonable and adequate diagnosis, medical care, treatment, follow-up,

and supervision for serious medical conditions; not providing continuity of care or access to continuous medical care for serious medical conditions; and failing to properly supervise, train, and/or take corrective action with respect to medical providers. To the extent that the source of Plaintiff's rights is any constitutional or statutory source other than the aforementioned constitutional amendments, this claim is brought on those bases as well.

67. Defendant COUNTY and the SBSD possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SBSD and the actions of employees of the SBSD, including customs, policies and/or practices relating to the provision of medical services to prisoners and detainees housed in San Bernardino County jails; as well as to personnel supervision, performance evaluation, internal investigations, discipline, records maintenance, hiring, termination, and/or retention.

68. At all relevant times, Defendants ARMC, John Price, Chau, Noel Hui, Edmund Ko, and DOES 1 through 10, and each of them, were employees and/or agents of SBSD and Defendant COUNTY and were under the direction and control of SBSD and Defendant COUNTY. These defendants acted in accordance with the customs, policies, and practices of the COUNTY and SBSD in delaying and/or denying Plaintiff access to and/or delivery of reasonable and adequate diagnosis, medical care, treatment, follow-up, and supervision for his serious but treatable medical condition.

69. Upon information and belief, at all relevant times, SBSD and Defendant COUNTY, with deliberate indifference to and/or reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiff and the risk of harm to Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied unconstitutional polices, practices and/or customs with respect to the provision of medical services to prisoners in San Bernardino County jails, including Plaintiff.

70. The customs, policies, and/or practices of SBSD and Defendant COUNTY were a moving force behind the constitutional violations alleged by Plaintiff herein and the resulting injuries to Plaintiff, entitling Plaintiff to compensatory damages according to proof and attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants CHARLES PICKETT, JOHN PARSONS, DONALD B. THORNTON, BONIFACIO C. ESPERANZA, JOHN CULTON, DAVID DUNN, NICHOLAS AGUILERA, JOSEPH BICK, RAY ANDREASEN, NABIL ATHANASSIOUS, ELI RICHMAN, BALRAJ DHILLON, DEEPAK MEHTA, JOHN PRICE, CHAU, NOEL HUI, EDMUND KO, ARROWHEAD REGIONAL MEDICAL CENTER, COUNTY OF SAN BERNARDINO, and DOES 1 through 10, and each of them, and award of damages jointly and severally, as follows:

1. General and compensatory damages according to proof;
2. Special damages according to proof;
3. Exemplary and punitive damages against each individual Defendant, in amounts according to proof;
4. Costs of litigation;
5. Reasonable attorneys' fees and costs permitted by 42 U.S.C. § 1988;
6. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: April 30, 2018   By: */s/ Caitlin S. Weisberg*
CAITLIN S. WEISBERG
Attorneys for Plaintiff

|     |                          |                            |
| --- | ------------------------ | -------------------------- |
|     |                          | LAW OFFICES OF WENDY KOEN  |
|     | DATED: April 30, 2018    | By: */ s / Wendy Koen*     |
|     |                          | WENDY KOEN                 |
|     |                          | Attorney for Plaintiff     |

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: April 30, 2018        By: */ s / Caitlin S. Weisberg*
                                  CAITLIN S. WEISBERG
                                  Attorneys for Plaintiff

LAW OFFICES OF WENDY KOEN

DATED: April 30, 2018        By: */ s / Wendy Koen*
                                  WENDY KOEN
                                  Attorney for Plaintiff